# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

JENNIFER M. GONZALES,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. C16-1865-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff Jennifer Gonzales proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1978.[1] She completed two years of college, obtaining an associate's degree, and previously worked as a gate guard and merchant patroller. (AR 47, 74.)

---

[1] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

ORDER
PAGE - 1

Plaintiff filed an SSI application in July 2013, alleging disability beginning January 1, 1984. (AR 179.) Her application was denied at the initial level and on reconsideration.

On February 26, 2015, ALJ Kimberly Boyce held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 38-85.) At hearing, plaintiff amended her alleged onset date to July 12, 2013, her SSI application date. (AR 42-43.) On May 28, 2015, the ALJ issued a decision finding plaintiff not disabled since July 12, 2013. (AR 20-34.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on September 30, 2016 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's juvenile rheumatoid arthritis and Sjögren's syndrome severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform

ORDER
PAGE - 2

light work, with the following limitations: she can stand and walk for a total of three hours and sit for more than six hours in an eight-hour work day with normal breaks; she can lift and carry ten pounds frequently and occasionally push and pull no more than ten pounds with the upper and lower extremities; she can never climb ladders, ropes, or scaffolds, can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl, and can frequently balance; and she can occasionally reach overhead and frequently handle and finger. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a gate guard and merchant patroller.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ also found plaintiff capable of performing other jobs, such as work as a call-out operator and order clerk, food and beverage.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in considering medical opinions, her husband's lay

ORDER
PAGE - 3

testimony, and her own testimony. She requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Symptom Testimony

Absent evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's testimony.[2] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ here found plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. Contrary to plaintiff's contention, the ALJ provided specific, clear, and convincing reasons in support of her conclusion.

///

---

[2] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. However, this change is effective March 28, 2016 and not applicable to the May 2015 ALJ decision in this case. The Court, moreover, continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 4

A.     Medical Evidence

Assessments of a claimant's symptom testimony are inescapably linked to conclusions regarding medical evidence. *See generally* 20 C.F.R. §§ 404.1529, 416.929. The ALJ considers inconsistencies between a claimant's statements regarding symptoms and all of the evidence of record, and symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence." §§ 404.1529(c)(4), 416.929(c)(4). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ in this case described medical evidence inconsistent with or contradictory to plaintiff's testimony as to the degree of her impairment.

As observed by the ALJ (*see* AR 28), the record reflects a juvenile rheumatoid arthritis (RA) diagnosis in childhood and confirmation of that diagnosis in July 2013 by treating rheumatologist Dr. David Wisner. Dr. Wisner noted destruction of the knees and involvement in plaintiff's shoulders, hand, and wrist. (AR 298.) The ALJ noted that, while plaintiff required total hip replacements, which she reported helped significantly, there was no evidence of other surgery for joint problems since the amended alleged onset date. (AR 28.)

The ALJ next considered September 2013 diagnostic reports and examination results. (*Id*.) Although revealing small joint effusion and moderate to severe tri-compartmental joint degeneration in her knees, x-rays of plaintiff's knees, hands, and right shoulders revealed no fractures or dislocations, no suspicious bony lesions, and no soft tissue calcifications. (AR 289-93.) Dr. Paul Seville affirmed the x-rays did not reveal any significant issues (AR 284-92) and a later left knee x-ray showed only moderate knee effusion and periarticular osteopenia (AR 457).

ORDER
PAGE - 5

Dr. Seville observed upper and lower extremity weakness, diminished range of motion (ROM) in knees starting with ankles, grip and upper extremity motor strength 3/5 bilaterally, and some painless skin lesions. He also noted plaintiff drove herself to the examination, did not use an assistive device, and was able to get into and out of a seated position with mild effort, and to remove and replace her shoes and socks, get on her toes, bend, and pick up items without much difficulty.

The ALJ described other examination notes (*see* AR 29 (citations to record omitted)), including a March 2014 denial of joint pain, swelling, muscle cramps, weakness, or stiffness, and a normal gait and station. In August 2014, plaintiff reported her joint pain was mostly in the lower extremities, relieved by medication, and mild. Treatment notes in November 2014 indicated all joint pain was fully stable and plaintiff took only over-the-counter (OTC) Ibuprofen and Tylenol if she had pain. Her rheumatologist noted her shoulders were non-tender to forced flexion, her elbows and wrists were non-tender with no synovitis and there was no effusion or tenderness in her knees with full ROM.

The ALJ acknowledged plaintiff's report of worsening symptoms in May 2014, corresponding with her report of applying for disability benefits. (AR 30.) She found an absence of support in the medical notes from the same time period, which indicated fatigue, fever, night sweats, anxiety, depression, and insomnia were not present and only moderately reduced ROM and small effusion. (*Id.* (citing AR 377).) In November 2014, plaintiff reported her joints were doing well with no morning stiffness. (*Id.* (citing AR 326).) The ALJ stated: "When the claimant again informed her physician of her disability application, she alleged increased morning stiffness and decreased [ROM]. However, notes further indicate that the claimant had been off her [RA] medication." (*Id.* (citing AR 370).)

The ALJ also addressed other conditions. Following surgery to remove a kidney stone in March 2014, remaining stones were deemed asymptomatic and post-operative notes indicated her serum calcium levels returned to normal. (AR 28-29.) The ALJ described the evidence associated with Sjögren's syndrome as showing mild symptoms, treated by eye drops, questions raised as to the diagnosis, and the absence of any additional symptoms, treatment, or medication for the condition. (AR 29.) In June 2014, following the observation of enlarged lymph nodes and parotid glands, plaintiff underwent a parathyroidectomy.

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle*, 533 F.3d at 1164. When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999). Plaintiff raises a variety of challenges to the ALJ's interpretation of the evidence. However, because the ALJ's interpretation is at least equally rational to that offered by plaintiff, her conclusion withstands scrutiny.

B.  Inconsistent Statements

An ALJ may consider inconsistency between a plaintiff's statements and other evidence in the record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Light*, 119 F.3d at 792. *See also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony.") The ALJ here contrasted a report by plaintiff of occasional hospital visits due to her immunosuppressive drugs (AR 377),

ORDER
PAGE - 7

with the absence of any hospital records to support this claim (*see* AR 367-477). She also contrasted plaintiff's testimony she did not feel a difference whether she was on or off her RA medication (Methotrexate or "MTX") (AR 72), with a March 2014 report the medication took away all of her knee pain (AR 342), an August 2014 report her joint pain was relieved by medication (AR 403), and subsequent reports her medication worked for her (*see*, *e.g.*, AR 479, 482 (February 2015)). (*See also* AR 328 (November 2014: "JRA was doing well on MTX, but has been off for 2 weeks).) The ALJ, in so doing, reasonably considered inconsistencies between plaintiff's statements and the record as undermining her testimony as to the severity and intensity of her pain. (AR 28.)

C.    <u>Activities</u>

An ALJ may consider inconsistencies or contradictions between a plaintiff's statements and evidence of her daily and other activities. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills[.]"); *Light*, 119 F.3d at 792 (ALJ may consider inconsistencies between a claimant's testimony and conduct or daily activities). The ALJ here (*see* AR 29-30) contrasted plaintiff's allegation of problems lifting, walking, and manipulating with her hands, with her report she was able to complete normal daily activities, such as showering, cleaning, and preparing simple meals, and on a typical day would go to the grocery store, spend time with friends, and explore the internet (AR 281), as well as her husband's report she goes bowling once in a while (AR 215). The ALJ noted that, after she stopped working, plaintiff was able to function sufficiently to attend school, without any accommodations, and complete a two-year associate's degree in March 2013. (*See* AR 47-48.) The ALJ found no significant worsening of plaintiff's overall condition, apart from temporary thyroid issues, after completing her degree

and noted her July 2013 report her arthritis had not been more active than before. (AR 298.) The ALJ further found plaintiff's testimony she applied and interviewed for jobs after completing her degree (AR 47-58) to suggest the ability to concentrate, work on a computer, interact with others, and travel at a higher level than alleged.

Plaintiff again offers a different interpretation of the evidence of her activities, noting, for example, the part-time nature of her schooling and the fact she also reported other symptoms in July 2013. (*See* AR 59-63 (school was three days a week for two hours a day) and AR 298 ("Her arthritis has not been more active but she does have difficulty with her feet with burning. There has been stiffness of her knees and they lock when she stands straight."; also reporting periodic red rash of spots on legs).) Yet, the ALJ drew a reasonable inference in finding the evidence of plaintiff's activities inconsistent with her statements as to the degree of her impairment. (*See, e.g.*, AR 63 (stating she could stand for only one minute before her knees lock up and hurt, and could only walk fifty feet or less before needing to stop and take a break).)

D. <u>Reason for Stopping Work</u>

The ALJ also considered that, while she alleged she stopped working in June 2008 due to her disability, the record showed plaintiff stopped working because the company she worked for went out of business. (AR 29, 200, 280-81.) This served as an additional specific, clear, and convincing reason for the ALJ's conclusion regarding plaintiff's symptom testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (specific, cogent reason for disregarding testimony included inconsistent statements as to why claimant left job).

Medical Opinions

In December 2013, nonexamining State agency medical consultant Dr. Dale Thuline found plaintiff able to stand and walk for three hours in a workday, frequently lift and/or carry ten pounds

ORDER
PAGE - 9

with limited pushing and pulling in the upper and lower extremities, and with occasional postural limitations, limited overhead reaching, and frequent to occasional manipulative limitations. (AR 111-13.) The ALJ accorded great weight to this opinion, finding it generally consistent with the overall evidence, including plaintiff's self-reports of daily functioning and the third party function report. (AR 30.) She reasoned: "Medical findings show no significant worsening of the claimant's condition after the amended alleged onset date and the claimant's treatment history is relatively conservative." (*Id.*) The ALJ noted Dr. Thuline is familiar with the Social Security Act and regulations and, since there had been no contradictory new and material evidence, adopted the limitations assessed.

In September 2013, consultative examining physician Dr. Seville found upper and lower extremity weakness, as well as diminished ROM in plaintiff's knees, starting with ankles, noted recent x-rays did not reveal any significant issues, and deemed plaintiff's prognosis fair. (AR 287.) He opined plaintiff could stand and walk at least four hours, had no maximum sitting limitation, could lift up to twenty pounds occasionally and ten pounds frequently, could occasionally climb, stoop, kneel, crouch, and crawl, had no balancing limitation, could occasionally engage in manipulative activities, and was limited in working around heavy machinery. (AR 287-88.) The ALJ assigned these opinions great weight, finding them consistent with the record as a whole and supported by the relevant evidence. (AR 30.) "For example, the claimant's rheumatologist noted in 2014 that the claimant's shoulders were non-tender to forced flexion, her elbows and wrists were non-tender with no synovitis and there was no effusion, no tenderness in her knees with full [ROM]." (*Id.* (citing AR 325-46).)

The ALJ thereafter afforded only partial weight to the opinions of treating rheumatologist Dr. Wisner and treating physician Dr. Dale Abbott. Plaintiff asserts error in this assessment.

ORDER
PAGE - 10

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester*, 81 F.3d at 830. Because they were contradicted by the opinions of Drs. Thuline and Seville, the ALJ could only reject the opinions of Drs. Wisner and Abbott with "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The Court, for the reasons set forth below, finds the ALJ's assessment of the treating physicians' opinions supported by substantial evidence.

A.  Dr. David Wisner

Dr. Wisner, in July 2013, observed destruction to plaintiff's knees, hand and wrist involvement, and hip replacement due to RA. (AR 298.) He added: "This is going to make working more difficult." (*Id*.) In October 2013, Dr. Wisner opined plaintiff could not return to work due to issues with joint pain and fatigue caused by RA. (AR 294.) He also opined plaintiff could follow simple instructions, but has memory problems, gets along with others, but is shy in social situations, and can complete daily activities of living with occasional assistance during RA flares. He listed as objective symptoms that would interfere with plaintiff's ability to perform a full time job: "Chronic joint pain – knees, feet, elbows, right shoulder, back. Knees lock. Fatigue requires rest/naps." (*Id*.) The ALJ gave the opinion partial weight "as it is inconsistent with the evidence of record, including his own findings that the claimant could complete activities of daily living with occasional assistance during flares of arthritis." (*Id*.)

An ALJ may reject a physician's opinion based on inconsistency with the record. *Tommasetti*, 533 F.3d at 1041. An ALJ also appropriately considers internal inconsistencies within and between physicians' reports. *Morgan*, 169 F.3d at 603.

ORDER
PAGE - 11

The ALJ here reasonably considered Dr. Wisner's own opinion that plaintiff could complete her activities of daily living "with occasional assistance during [RA] flares." (AR 294.) This statement suggests plaintiff did not require assistance when not experiencing a flare and reflects the need for only occasional assistance during a flare. The finding of inconsistency was further reasonable given plaintiff's report of her ability to shower, clean and prepare simple meals, and a typical day as including going to the store for groceries, spending time with friends, helping her son get ready for school, and taking him to the bus stop (AR 281); her husband's report she went out with friends, went bowling, and met at dinner places once in a while (AR 215); and her testimony she attended school, completed a two-year degree, and subsequently applied and interviewed for jobs (AR 47-50, 54-55).

The ALJ also rationally interpreted the record as inconsistent with the conclusions of Dr. Wisner. Prior to addressing the medical opinions, the ALJ described the medical record in detail, including the September 2013 x-rays and Dr. Seville's examination (AR 284-93); plaintiff's reports as to the effectiveness of her medication (AR 342-46, 334-36, 403-05, 479-82); and treatment notes in in which plaintiff denied RA symptoms (AR 432), had normal gait and station (AR 371, 382, 432), and, in November 2014, indicated all joint pain was fully stable, that she only took OTC medication if she had pain, and finding her shoulders non-tender to flexion, elbows and wrists non-tender with no synovitis, and no effusion or tenderness in knees, with full ROM (AR 326-28, 393-95)).[3] Other records provide additional support for the ALJ's conclusion. (*See, e.g.*, AR 337-41 (April 2014: symptoms mild and relieved by nothing; having pain symptoms, but had

---

[3] While the ALJ states the November 2014 treatment notes and examination results occurred "[a]t about the same time," they were taken from the same examination and appear twice in the record. (AR 29, 326-28, 393-95.)

ORDER
PAGE - 12

been off medication because of kidney stone); AR 406 (July 2014: some, but not all joint pain improved); AR 330-32 (September 2014: persistent joint pain, mild, relieved by nothing, over all better after prednisone burst, still pain in hands and shoulders, but holding off on medications while on antibiotics); AR 390-92 (November 2014: emergency room visit for allergic reaction, but everything else normal); AR 479-82 (February 2015: all over joint pain, moderate, relieved by medication, but plaintiff had not been taking for couple of months: "For some reason she stopped MTX because of UTI and never resumed it. She states she did not know she needed to resume it after the infection was over and there are a lot of other things going on so she did not call or come in."))

Plaintiff argues the ALJ failed to properly cite to the evidence supporting her conclusion or to give the reasoning necessary to reject this opinion evidence. However, the Court is not deprived of its "faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755. "Even when an agency 'explains its decision with "less than ideal clarity,"' we must uphold it 'if the agency's path may reasonably be discerned.'" *Molina*, 674 F.3d at 1121 (quoted sources omitted). In this case, the ALJ's discussion of the medical records preceding her consideration of the opinions of Dr. Wisner provided the necessary support for her conclusion. The Court was able to discern relevant individual records within exhibits relied upon by the ALJ. Plaintiff further fails to support her contention of error in the finding of inconsistency between Dr. Wisner's opinions and the medical record. The ALJ's assessment will not be disturbed.

B.    <u>Dr. Dale Abbott</u>

In May 2014, Dr. Abbott completed a form associated with plaintiff's student loans and entitled "Discharge Application: Total and Permanent Disability." (AR 414-15.) Dr. Abbott

ORDER
PAGE - 13

opined plaintiff's RA prevented her from engaging in substantial gainful activity (SGA) in any field of work. (AR 415.) Dr. Abbot also included limitations to sitting for thirty minutes, walking for less than a mile, and lifting a maximum of twenty pounds on occasion. He assessed plaintiff as able to drive, walk short distances, and perform self-care with rest breaks.

The ALJ described Dr. Abbott's opinion that plaintiff could not engage in SGA and gave it only partial weight as inconsistent with the overall objective evidence. (AR 31.) She stated: "For example, examination notes in March 2014 indicated that the claimant denied joint pain, swelling, muscle cramps, muscle weakness and stiffness. Notes further indicate the claimant had a normal gait and station." (*Id.* (citing AR 367-477.)

Plaintiff avers error in the assessment of Dr. Abbott's opinions for the same reasons raised in relation to Dr. Wisner. She maintains the ALJ improperly "cherry picked" the record in citing to the March 2014 treatment note. The Court, however, finds the ALJ properly relied on her rational interpretation of the medical record in reaching her conclusion regarding Dr. Abbott.

The ALJ also discussed other records from both Dr. Abbott and rheumatologist Dr. Min Xu in addressing plaintiff's complaints of worsening symptoms in May 2014. Plaintiff, at that time, informed Dr. Abbott she was applying for disability benefits with the hope her student loans would be forgiven. (AR 30 (citing AR 377).) The examination indicated fatigue, fever, night sweats, anxiety, depression and insomnia were not present, and plaintiff had only moderately reduced ROM and small effusion. (*Id.*; *see also* AR 377-78 (plaintiff was not taking her RA medication due to an infection, but appeared well, with no appreciable disease (NAD), had an antalgic gait, moderately reduced ROM and small effusion (no redness or warmth) in her knee, deceased ROM in left hip due to prior total hip arthoplasty, and tenderness or pain to palpation and decreased ROM on right).) In November 2014, Dr. Xu noted plaintiff's report her joints were

ORDER
PAGE - 14

doing well with no morning stiffness. (AR 30 (citing AR 326).) When plaintiff again informed Dr. Abbott of her disability application in January 2015, she alleged increased morning stiffness and decreased ROM, but had been off her RA medication. (*Id.* (citing AR 370 (finding temporary disabled parking permit warranted because "at times arthritis is quite painful and acute" and "sometimes she requires an assistive device", but hopeful mobility would improve with restarting medication; stating plaintiff "periodically does experience flares of her arthropathy which make it difficult for her to ambulate" and noting antalgic gate, but that plaintiff appeared well, NAD, with no "significant deformities (yet)" and had good ROM).)

Plaintiff contends the ALJ ignored portions of the March 2014 treatment note cited as inconsistent with Dr. Abbott's opinion, such as the complaints of fatigue, nausea, abdominal pain, hematuria, urinary frequency, pelvic pain, and back pain. (*See* AR 432.) However, most of these complaints appear related to a kidney stone that was removed two later days. (*See* AR 431-41.) As observed earlier in the decision, remaining kidney stones were asymptomatic and her serum calcium levels returned to normal. (AR 29 (citing AR 462); *see also* AR 384 (plaintiff reported to Dr. Abbott in February 2014 that she also had a kidney stone "back in 2005.")) It is, moreover, apparent the ALJ focused on plaintiff's March 2014 musculoskeletal reports because Dr. Abbott based his opinions on plaintiff's RA. The ALJ's consideration of this medical opinion is supported by substantial evidence.

### Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence and cannot be disregarded without comment. *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ can reject the testimony of lay witnesses only upon giving germane reasons. *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996)

ORDER
PAGE - 15

(finding rejection of testimony of family members because, *inter alia*, they were "'understandably advocates, and biased'" amounted to "wholesale dismissal of the testimony of all the witnesses as a group and therefore [did] not qualify as a reason germane to each individual who testified.") (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

The ALJ considered the lay testimony of plaintiff's husband that her illness affected her ability to lift, stand, sit, and walk, and caused her to have various postural and mental limitations. (AR 31, 211-18.) She gave the testimony some weight, but found the described level of functioning not supported by the weight of credible medical evidence of record. "For example, on examination, the claimant was able to get into and out of a seated position with mild effort, remove and replace her shoes and socks without much difficulty and get on her toes and bend without much difficulty." (AR 31 (citing AR 284-93).)

"One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). The ALJ here reasonably construed the record as showing a conflict between the lay testimony and the medical evidence. The ALJ also provided an appropriate example of that conflict given that plaintiff's husband described her as always needing help to get dressed, requiring assistance with showering, including getting in and out of the shower, unable to bend over to shave, always needing help getting on and off the toilet, unable to bend her knees far enough to use the stairs, and falling down all the time. (AR 212.) Plaintiff does not, therefore, demonstrate error in the ALJ's consideration of the lay testimony.

/ / /

/ / /

/ / /

ORDER
PAGE - 16

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 10th day of July, 2017.

Mary Alice Theiler
United States Magistrate Judge